IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

| | |
|---|---|
| **J. C.**, a minor by and through his mother and next friend, **MICHELLE COOK**; | (Civil Action No. 3:12-cv-04103) |
| **I. Z.**, a minor by and through his mother and next friend, **MARY MASTERS**; | (Civil Action No. 3:12-cv-04112) |
| **M. M.**, a minor by and through her mother and next friend, **JEANETTE MASKILL**; | (Civil Action No. 3:12-cv-04114) |
| **D. M.**, a minor by and through his mother and next friend, **REBECCA MARDORF**; | (Civil Action No. 3:12-cv-04111) |
| **J. S.**, a minor by and through his mother and next friend, **CINDY SIMPSON-DURAND**; | (Civil Action No. 3:12-cv-04115) |
| **H. S.**, a minor by and through her mother and next friend, **SHANNON SCALISI**; | (Civil Action No. 3:12-cv-04116) |
| **E. D.**, a minor by and through her mother and next friend, **DENICE DARCY**; | (Civil Action No. 3:12-cv-04105) |
| **C. B.**, a minor by and through her mother and next friend, **LALA FIELDS**; | (Civil Action No. 3:12-cv-04113) |
| **L. V.**, a minor by and through his mother and next friend, **LORIE VINSON**; | (Civil Action No. 3:12-cv-04117) |
| **J. E.**, a minor by and through his mother and next friend, **MARLO CHEEKS**; | (Civil Action No. 3:12-cv-04110) |
| **A. N.**, a minor by and through her mother and next friend, **HEATHER NORFOLK**; | (Civil Action No. 3:12-cv-04109) |
| **T. S.**, a minor by and through his Mother and next friend, **DAWN SKURRY**; | (Civil Action No. 3:12-cv-04106) |
| **A. H.**, a minor by and through her mother and next friend, **HEATHER SLABAUGH**; | (Civil Action No. 3:12-cv-04118) |
| **A. W.**, a minor child by and through his mother and next friend, **SHERI WIDNER**; | (Civil Action No. 3:12-cv-04120) |

| | |
|---|---|
| **K. W.**, a minor by and through her mother and next friend, **ANGEL WOLFERTZ**; | (Civil Action No. 3:12-cv-04122) |
| **H. C.**, a minor by and through her mother and next friend, **MELISSA SHROYER**; | (Civil Action No. 3:12-cv-04121) |
| **C. S.**, a minor child by and through his mother and next friend, **KIMBERLY LANCASTER**; | (Civil Action No. 3:12-cv-04123) |
| **D. B.**, a minor by and through his mother and next friend, **NINA BRUMFIELD**, | (Civil Action No. 3:12-cv-04108) |

Plaintiffs,

v.

**PFIZER, INC**.,
**ROERIG**, a division of Pfizer, Inc., and
**GREENSTONE, LLC** f/k/a Greenstone, LTD.

Defendants.

### MEMORANDUM OPINION AND ORDER

Pending in each of the above-styled cases is Plaintiffs' Motion to Remand (ECF No. 6)[1] and Defendants' Motion to Stay (ECF No. 9). For the following reasons, the Court **GRANTS** Plaintiffs' Motion to Remand and **DENIES** Defendants' Motion to Stay.

### I. Factual Background

The eighteen cases listed in this Order were initially brought through a single complaint in the Circuit Court of Wayne County, West Virginia. As directed by West Virginia Rule of Civil Procedure 3(a), the Clerk of the Circuit Court of Wayne County assigned each of the original nineteen plaintiffs listed on the Complaint a separate case number, and assessed

---

[1] Citations to Electronic Case File numbers are to the numbers assigned in the first-listed case, 3:12-cv-04103, but refer and apply to the same documents filed in the other seventeen cases.

supplemental filing fees. *See* ECF No. 14, Ex. A (Affidavit of Milton J. Ferguson). Plaintiffs were not required to file separate complaints. *Id.*

Plaintiffs are women who took the drug sertraline hydrochloride during pregnancy, and the minor children resulting from those pregnancies ("Plaintiffs"). Plaintiffs are residents of West Virginia, Pennsylvania, Michigan, Connecticut, Oklahoma, Louisiana, Florida, Texas, Tennessee, Maryland, North Carolina, Florida, Oregon, South Carolina, Ohio, and New York. Defendants are Pfizer, Inc., Roerig, a divison of Pfizer, Inc., and Greenstone, LLC, a subsidiary of Pfizer, Inc., which manufacture and distribute sertraline hydrochloride, which is also known by its brand name, Zoloft ("Defendants"). Defendants Pfizer and Roerig are citizens of New York and Delaware, and Defendant Greenstone is a citizen of New Jersey and Delaware. *See* Compl. ¶ 34; Notice of Removal, ECF No. 1, ¶¶ 9-10. Plaintiffs state products liability and negligence claims against Defendants, alleging that Defendants' actions in making, marketing, and monitoring the effects of sertraline hydrochloride ("Zoloft") resulted in congenital birth defects.

## II.     Analysis

### A.     Motion to Stay

Defendants move to stay this matter pending its possible transfer to Multidistrict Litigation (MDL). ECF No. 9. Defendants argue that the Court should not consider the motion to remand, because a conditional transfer order has been entered in this case, designating it for possible transfer to the MDL pending before Judge Rufe in the Eastern District of Pennsylvania. *See* MDL No. 2342, *In re: Zoloft (Sertraline Hydrochloride) Products Liability Litigation*. Defendants argue that staying the motion to remand pending the transfer determination serves the interests of judicial economy.

The establishment of a MDL and the processing of a conditional transfer order do not, however, undermine this Court's ability to consider and dispose of a remand motion. *See* Moore's Federal Practice § 112.06(1) (2000); Rules of Procedure, Judicial Panel on Multidistrict Litigation, Rule 18 ("The pendency of a . . . conditional transfer order . . . does not in any way limit the pretrial jurisdiction of [the transferor] court."). Given the "significant federalism concerns" implicated by removal jurisdiction, *see Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994), the Court finds that the propriety of removal jurisdiction should be determined as soon as possible. Although transferee courts can and do consider remand motions in cases transferred to MDL, such a delay in resolution may also frustrate the state court's ability to process and conclude claims in its courts. In this case, the Court **DENIES** the motion to stay and will address the motions to remand.

### B. Motions to Remand

All eighteen Plaintiffs have moved to remand their cases to the Circuit Court of Wayne County. ECF No. 6. Defendants oppose remand.

Plaintiffs instituted this case by filing a single complaint on behalf of nineteen plaintiffs in the Circuit Court of Wayne County, West Virginia. Each Plaintiff was assigned a different case number by that court. Defendants removed eighteen of the nineteen cases to this Court, where each was likewise assigned a separate case number. Defendants concede that the nineteenth plaintiff, Angela Dropp ("Dropp") is a citizen of New York, and thus not diverse from all Defendants. *See* 28 U.S.C. 1441. Defendants did not remove the case assigned to Dropp. Defendants argue that removal is proper, however, because when each case is analyzed separately, each removed Plaintiff is diverse from each Defendant. Defendants argue in the alternative that even if the Court is inclined to treat these cases as one case for the purposes of

determining jurisdiction, the Court should determine that the Dropp Plaintiffs are fraudulently joined, and disregard their citizenship when performing a diversity analysis.

Plaintiffs move to remand, ECF No. 6, arguing that the case filed in Wayne County Circuit Court was a single case, and that the state court's decision to treat each plaintiff separately for administrative purposes should not determine the positions of the parties for the purposes of federal diversity jurisdiction analysis. Plaintiffs further argue that the Dropp Plaintiffs were not fraudulently joined, and so their presence as plaintiffs in the case destroys diversity.

The party seeking removal bears the burden of demonstrating jurisdiction. *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 370 (4th Cir. 2003) (citation omitted). This burden is significant, because removal jurisdiction must be strictly construed against removal. *See, e.g., Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) ("Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction." (citation omitted)); *Baisden v. Bayer Corp.*, 275 F. Supp. 2d 759, 761 (S.D. W. Va. 2003).

### 1. West Virginia Rule of Civil Procedure 3(a)

West Virginia Rule of Civil Procedure 3(a), "commencement of action," provides: "A civil action is commenced by filing a complaint with the court. For a complaint naming more than one individual plaintiff not related by marriage, a derivative or fiduciary relationship, each plaintiff shall be assigned a separate civil action number and be docketed as a separate civil action and be charged a separate fee by the clerk of a circuit court." W. Va. R. Civ. P. 3(a).

Defendants argue that because the state court separated Plaintiffs' claims into distinct case numbers, and charged separate filing fees for each case, the claims are not properly joined.

Without proper joinder, eighteen of the nineteen plaintiffs are completely diverse from all Defendants, and so their cases may not be remanded. Plaintiffs respond that W. Va. R. Civ. P. 3(a) is exclusively an administrative rule, designed to assist state courts handling mass actions with the costs and organization associated with those actions. As such, it should not determine the nature of the complaint for the purposes of a diversity analysis.

Rule 3(a) was amended in 2008 to provide that actions filed by multiple unrelated plaintiffs must be docketed as separate civil actions and charged separate fees. In *Grennell v. Western Southern Life Insurance Co.*, a case decided before Rule 3(a) was amended, this Court considered a remand motion in a matter where multiple unrelated plaintiffs had filed a claim in the Circuit Court for Mason County, West Virginia. *Grennell v. Western Southern Life Ins. Co.*, 298 F. Supp. 2d 309, 393 (S.D. W. Va. 2004). The Mason County Court's chief judge issued an administrative order requiring each "family unit" of Plaintiffs to pay a separate filing fee, and assigned each unit a separate case number. *Id*. Plaintiffs were not, however, required to file multiple complaints, and the entire action was assigned to one judge of the Circuit Court. *Id.* The purpose of the separate case number requirement was apparently to allow the court to properly track and assess filing fees and track documents relevant to individual plaintiffs. *Id*. In *Grennell*, the Court found that although Plaintiffs' cases had been administratively separated in the state court, Defendants had not met the burden of showing that Plaintiffs were not properly joined for the purposes of a federal diversity jurisdiction analysis. *Id*. at 395.

Mass action rules similar to those given by the administrative order at issue in *Grenell* were added to West Virginia Rule of Civil Procedure 3(a) in 2008. Defendants argue that Rule 3(a) can be distinguished from the administrative order in *Grennell*, because Rule 3(a) specifies that each plaintiff's claim shall be "docketed as a separate civil action." W. Va. R. Civ. P. 3(a).

6

Defendants offer no authority, however, for the proposition that Rule 3(a) was meant to have the rather severe substantive effect of prohibiting all unrelated persons from proceeding with a mass claim in West Virginia state courts. Instead, it seems more likely that the changes to Rule 3(a) were intended to alter the administration of mass claims by the state courts. Plaintiffs provide the affidavit of the Clerk of the Wayne County Circuit Court, Milton Ferguson (Ferguson Affidavit), stating that Plaintiffs in this matter were separated by the state court as directed by Rule 3(a), but that they were not required to file separate complaints, were not considered separate cases, and were all assigned to the same judge. *Id.* A single affidavit may not be dispositive on the question of how to interpret a state rule of civil procedure, but in this case, it illustrates the principle evident from the changes to Rule 3(a) and the principle adopted by this Court in *Grennell*: administrative separation of claims in state court does not determine the propriety of joinder in federal court. Defendants have not met their burden of demonstrating that Plaintiffs' claims were not properly joined because of case processing practices in Wayne County Circuit Court.

### 2. Fraudulent Joinder

#### a. Standard

Defendants next argue that even if this matter can be viewed as a single case in light of the Rule 3(a) separation of plaintiffs by the Wayne County Circuit Court, the Court should determine that the Dropp Plaintiffs, the only plaintiffs not diverse from all defendants, were fraudulently joined.

The "fraudulent joinder" doctrine "permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Mayes v. Rapoport*, 198

F.3d 457, 461 (4th Cir. 1999). In *Grennell*, this Court held that the fraudulent joinder doctrine could be applied to plaintiffs as well as defendants. 298 F. Supp. 2d at 396. In such a case, a defendant seeking to dismiss a nondiverse plaintiff must prove that the nondiverse plaintiff cannot establish a claim against the defendant, "even after resolving all issues of fact and law in the plaintiff's favor." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232-33 (4th Cir. 1993). The defendant must show that no possibility of a right to relief has been asserted. *Id*. at 233. The Fourth Circuit has held that "this standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999); *see also Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992) ("[W]hile we will not apply a Rule 12(b)(6) standard in examining [the plaintiff's claims], we will examine the complaint and the district court's opinion to determine whether they could support a conclusion that the claims . . . were not even colorable, *i.e.*, were wholly insubstantial and frivolous.").

Misjoinder is present, and severance appropriate, when the claims asserted by or against the joined parties do not arise out of the same transaction or occurrence or do not present some common question of law or fact. *Jonas v. Conrath*, 149 F.R.D. 520, 523 (S.D. W. Va. 1993) (citations omitted). Joinder is appropriate when two specific requisites are met: the claims must arise out of the same transaction, series of transactions, or occurrence, and some question of law or fact common to all parties must be present. *See* Wright, Miller, & Kane, 7 Federal Practice & Procedure § 1653. Some courts apply an "egregiousness" standard to determine whether a claim was fraudulently joined. Under this standard, fraudulent joinder only occurs if joinder is inappropriate under the applicable rules of civil procedure and "collusive joinder to defeat the diversity jurisdiction of the federal courts" is present. *See e.g., Coleman v. Conseco, Inc.*, 238 F.

8

Supp. 2d 804, 814 (S.D. Miss. 2002). For the reasons articulated in *Grennell*, this Court does not apply the egregiousness standard. *See Grennell*, 298 F. Supp. 2d at 396.

Therefore, in order to show fraudulent joinder, Defendants must demonstrate that Plaintiffs fail to meet either or both of the requirements for joinder: 1) the claims must arise out of the same transaction, series of transactions, or occurrence; and 2) some question of law or fact common to all parties must be present. *See* Wright, Miller, & Kane, 7 Federal Practice & Procedure § 1653.

"Plaintiffs may join their claims together if they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2); *see also* W. Va. R. Civ. P. 20 (similar). The Supreme Court of the United States has said that Rule 20(a) must be interpreted to allow for the "broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). The rule must be construed "in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (citations omitted). Absolute identity of all events giving rise to the claims is unnecessary. *Id.*

In determining whether a right to relief arises from the same transaction or occurrence, the focus is on the relationship between events giving rise to the action. *See Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926) ("Transaction is a word of flexible meaning. It may comprehend many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship."). "Accordingly, all 'logically related' events

9

entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330 (8th Cir. 1974).

### b. Plaintiffs' Claims

Plaintiffs argue that the claims in the complaint satisfy the same transaction or occurrence requirements of Rule 20 because the claims all arise "out of the design and mass production of Zoloft and its distribution without adequate labeling of known risks and warning about the drug's inherent dangers." Compl. ¶ 33. The Court agrees.

The Complaint alleges that all Defendants designed, manufactured, and promoted the drug sertraline hydrochloride, under the trade name Zoloft and/or its generic equivalent. *Id.* ¶¶ 35, 40, 46. Defendants in this case are business entities that essentially constitute a single manufacturer.[2] Plaintiff Mothers claim they ingested Zoloft while they were pregnant, in a manner and dosage recommended by Defendants and prescribed by their physicians. *Id.* ¶ 65. Plaintiff Minors allegedly suffered birth defects as a result. The Complaint alleges that prior to *all* Mother Plaintiffs becoming pregnant, Defendants knew or should have known of risks associated with taking Zoloft during pregnancy. *Id.* ¶¶ 66-79. According to the Complaint, Defendants failed to adequately disclose the risks of birth defects to Plaintiffs and the medical community. *Id.* ¶¶ 81-85. Plaintiffs charge that Defendants actively concealed and suppressed the dangers. *Id.* ¶ 87. Had adequate warnings and information about the risks of Zoloft appeared on the drug label, they claim, their treating physicians would not have prescribed the drug. *Id.* ¶ 108. As alleged in the Complaint, therefore, Plaintiffs are similarly situated (mothers who ingested Zoloft during pregnancy and minors born to those mothers), and suffered similar injuries (birth defects), at approximately the same time (after Defendants had knowledge of the

---

[2] Plaintiffs allege that Defendant Roerig is a division of Pfizer, Inc., Compl. ¶ 39, and Defendant Greenstone LLC is a wholly owned subsidiary of Pfizer, Inc., *id.* ¶ 45.

risks and failed to adequately warn of those risks).  The Court concludes that as alleged in the Complaint, Plaintiffs' claims are logically related, and arise from the same series of transactions or occurrences—namely the production, distribution, and promotion of Zoloft.

Plaintiffs' claims also satisfy the second requirement of Rule 20(a)—that any question of law or fact common to all plaintiffs will arise in this action.  Fed. R. Civ. P. 20(a)(1)(B).  Questions of fact common to all Plaintiffs include the design of Zoloft, Defendants' knowledge of Zoloft's safety, and Defendants' representations about its safety.  Defendants' efforts to transfer these actions to pending MDL proceedings contradict their arguments that Plaintiffs' claims do not share any common question of law or fact.  *See* 28 U.S.C. § 1407(a) (authorizing transfer for coordinated pretrial proceedings when civil actions involve "one or more common questions of fact").  Therefore, Plaintiffs easily satisfy the common question of law or fact requirement.

Defendants urge the Court to follow other cases where federal courts retained diversity jurisdiction based on fraudulent misjoinder in drug products liability actions.  *See, e.g., In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.,* No. 11-3045, 2012 WL 1118780 (D.N.J. Apr. 3, 2012); *In re Baycol Prods. Litig.*, No. 03-2931, 2003 WL 22341303 (D. Minn. 2003); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136 (S.D.N.Y. 2001); *In re Diet Drugs Prods. Liab. Litig.*, No. Civ.A. 98-20478, 1999 WL 554584 (E.D. Pa. July 16, 1999).  These cases, however, are distinguishable.  In *Fosamax*, the court held that the plaintiffs' claims were improperly joined where the complaint: (1) broadly alleged a "long bone fracture" without specifying the type of fracture or how it occurred; (2) stated that the plaintiffs purchased the drug from "a wide variety of manufacturers;" and (3) failed to identify the purpose for which the drug was taken, the doses, or duration of treatment.  2012 WL 1118780, at *4.  First, the Court takes

the Complaint as stated with respect to the injuries alleged. Here, Plaintiffs are all pregnant women who ingested Zoloft during pregnancy and their children who suffered congenital defects. The injuries alleged in this case are therefore particular to pregnant women and their children. Second, Plaintiffs identify specific manufacturers as Defendants, all of whom are related entities. Third, Plaintiffs allege that they each took doses in quantities as prescribed by their physicians and took those doses in a discrete time period—during pregnancy. *In re Rezulin* is likewise distinguishable. Plaintiffs in that case failed to allege they received the drug from the same source, that they were exposed to the drug for similar periods of time, or that they suffered similar specific injuries. 168 F. Supp. 2d at 146. As discussed *supra*, Plaintiffs here have alleged that they ingested the drug in doses prescribed by physicians, during the terms of their pregnancies, and that congenital birth defects resulted to their children. Finally, the *In re Diet Drugs* plaintiffs failed to allege that they took the same drug or combination of drugs. 1999 WL 554584, at *3. Here, Plaintiffs allege that each of the mothers ingested Zoloft during pregnancy. The Court finds that Plaintiffs in this case have pleaded sufficient allegations to demonstrate that joinder is proper.

      Similarly, the Court's reasoning in *Grennell* does not compel a different conclusion, as Defendants suggest. ECF No. 13 at 3. In *Grennell*, the plaintiffs brought fraud claims against an insurance company and individual agents arising out of the sale of "vanishing premium" life insurance policies. 298 F. Supp. 2d at 391. This Court concluded that the plaintiffs improperly joined their claims because each of the purchases was induced by a different representation made by a different individual agent, each of which constituted a separate transaction or occurrence. *Id.* at 398. The plaintiffs did not allege that they relied "in some way on the same misrepresentation," but instead claimed that "they were separately induced by individual . . .

agents to purchase the product." *Id*.  Here, Plaintiffs allege that Defendants possessed knowledge regarding Zoloft's safety and concealed that same knowledge from all Plaintiffs. Compl. ¶ 87.  Those misrepresentations and omissions, Plaintiffs claim, appeared in the Zoloft drug label and elsewhere. *Id*. ¶¶ 33, 108.  Therefore, unlike the plaintiffs in *Grennell*, Plaintiffs here assert sufficient allegations that their claims arise from the same occurrences, including Defendants' misrepresentations about Zoloft's safety.  *See Grennell*, 298 F. Supp. 2d at 398 (concluding that joinder may be proper if plaintiffs alleged that the defendant had produced a single prospectus upon which they each relied).  Defendants have not met their burden of demonstrating that Plaintiffs' claims were not properly joined because they did not arise from the same series of transactions or occurrences.

### III.   Conclusion

For the foregoing reasons, the Court concludes that Plaintiffs filed a single action in the state court and Plaintiffs' claims were properly joined.  Accordingly, Defendants have not met their burden of demonstrating that this Court has jurisdiction and that removal is proper. Therefore, the Court **DIRECTS** that the cases be **REMANDED** to the Circuit Court of Wayne County, West Virginia.  Each of the above actions shall be **STRICKEN** from this Court's docket.  The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:   September 25, 2012

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE